UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREA PETERSON                                                CIVIL ACTION

VERSUS                                                         NO: 13-0933-KDE-SS

WELLPOINT, INC., et al

REPORT AND RECOMMENDATION

This matter is before the assigned Magistrate Judge pursuant to the District Judge's order of April 18, 2013 which provides, in part, that:

> **IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72, and in accordance with Local Rules 72 and 73 of this Court, the complaint filed by plaintiff is hereby **REFERRED** to United States Magistrate Judge Sally Shushan to hear and decide all nondispositive pretrial matters pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) and (3), and with regard to dispositive motions, including any for injunctive relief, to conduct any necessary hearings and to file a report including proposed findings of fact and recommendations for disposition by the undersigned, pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B) and (3).

Rec. doc. 7.

Procedural Background

On April 16, 2013, Andrea Peterson filed a complaint in the Eastern District of Louisiana against WellPoint, Inc. ("WellPoint"), Empire Blue Cross Blue Shield Association ("Empire"), Center for Restorative Breast Surgery LLC ("Surgery Center"), and Center for Medicare Services a Federal agency within the United States Department of Health and Human Services ("Medicare Services").  She alleged a denial of her rights under the United States Constitution, 42 U.S.C. § 2000d, Title XVII of the Social Security Act, the Medicare Program, other federal statutes, and breach of contract.  Rec. doc. 1.  Ms. Peterson is proceeding in proper person.

Ms. Peterson describes herself as homeless, but maintaining a mailing address in Atlanta.

The places of business alleged for the defendants are: WellPoint - Indianapolis; Empire - Chicago; Medicare Services - Baltimore; and Surgery Center - New Orleans. Rec. doc. 1 at 3-9.

Ms. Peterson alleges that jurisdiction is present under the laws of the United States and that there is complete diversity. She contends venue is proper as the Surgery Center "is located in New Orleans, Louisiana, where plaintiff traveled to obtain surgery and was denied medical care." Id. at 10. For allegations of fact, the complaint refers to her affidavit which is attached to her motion for temporary restraining order. Id. and Rec. doc. 4 (Attachment). The complaint lists ten causes of action. Eight of these are based on the U.S. Constitution or federal statutes. The second cause of action is for breach of contract. The tenth cause of action alleges intentional infliction of emotional distress and interference with contractual relations. Rec. doc. 1 at 11-12.

Ms. Peterson seeks an order requiring: (1) Surgery Center to give her priority in rescheduling her surgery, perform it immediately and provide all documents pertaining to her; and (2) WellPoint and Empire to provide documents and information pertaining to her. She seeks an order for: (1) costs for travel to New Orleans from Atlanta and while in New Orleans; and (2) legal fees so that she may consult with an attorney. No specific relief is sought from Medicare Services. She seeks an order that the Surgery Center provide an affidavit that "the amount of insurance reimbursement was not a factor in the cancellation of plaintiff surgery." Rec. doc. 1 at 13.

In her motion for a temporary restraining order, Ms. Peterson sought the relief described her complaint. Rec. doc. 4. She alleged that WellPoint and Empire did not approve the surgery. She referred to an 18 month effort to secure surgery and "now for the fifth time, delay and deprivation of plaintiff medical care, and cancellation of plaintiff surgery." Rec. doc. 4 at 5. On April 18, the District Judge denied the motion for a TRO. Rec. doc. 7. The Court of Appeals for the Fifth Circuit denied her application for an injunction pending appeal. Rec. doc. 17.

On May 17, 2013, the Surgery Center moved to dismiss for failure to state a claim. Rec. doc. 19. Similar motions were filed by WellPoint and Empire HealthChoice Assurance, Inc. and Blue Cross and Blue Shield Association. Rec. docs. 29 and 32.

On May 21, 2013, Ms. Peterson moved to transfer the case to the Northern District of Georgia and for a stay pending transfer. Rec. doc. 20.

### Section 1404 Change of Venue

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." Id.

> In applying the provisions of § 1404(a), we have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.

In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004). The defendants contend that Ms. Peterson cannot satisfy this first requirement. They argue that, pursuant to 28 U.S.C. § 1391(b)(1), venue in the Northern District of Georgia is not proper. Rec. docs. 25 and 26.

Pursuant to 28 U.S.C. § 1391(b)(1), a civil action may be brought in a judicial district in which any defendant resides. This provision is inapplicable as none of the defendants are residents of Georgia.[1]

---

[1] Although Medicare Services is named as a defendant, Ms. Peterson did not name an officer or employee of the United States acting in his or her official capacity as a defendant. Assuming *arguendo* that Ms. Peterson had named such a person, the action may be brought in any judicial district in which the officer or employee resides, a substantial part of the events or omissions giving rise to the claim occurred, or the plaintiff resides if no real property is involved in the action. 28 U.S.C. § 1391(e)(1). "The additional venue possibilities of § 1391(e) are available *only against federal defendants in a case*. . . . [A]s to non-federal defendants the normal requirements of other venue provisions would apply." Baicker-McKee, *Federal* Civil Rules Handbook (2011) at 90 (emphasis in original). Thus, notwithstanding the presence of Medicare Services, the venue of the transferee district must be proper as to the non-federal defendants and in accord with 28 U.S.C. § 1391(b).

Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ," which is referred to as transactional venue. 14D Wright, Miller and Cooper, Federal Practice and Procedure ("Wright") §3806.1 at 200 (3rd ed. 2007). Most courts are quite lenient in finding that a substantial part of the events occurs in a district, id. at 200-201, and it is clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred. Id. at 201.

The initial issue is whether a substantial part of the events giving rise to the claims occurred in the Northern District of Georgia.

## Analysis

Ms. Peterson's claims arise out of her lengthy efforts to obtain reconstructive surgery. These efforts began at least a year and half before the February 28, 2013 letter from the Surgery Center's Scott Sullivan, M.D. to Ms. Peterson in which he reported that he would not perform the surgery. The letter identified four reasons for the decision. They were related to the need for a caregiver for all surgical patients and post-surgical care for Ms. Peterson. It did not appear to Dr. Sullivan that Ms. Peterson, who had traveled to New Orleans from Atlanta for the surgery, was prepared to meet the obligations described in the letter. Rec. doc. 19 (Exhibit).

On March 14, 2013, Anita Kendrick, the Director CTM and Grievance Appeals - Medicare Programs for Empire in Mason, Ohio, stated that "[a]s I have stated repeatedly, your consultation and surgical procedure was authorized by WellPoint. Your surgery was approved as requested by Dr. Sullivan's office." Rec. doc. 4 (Exhibit M). She reported that reimbursement was set by Medicare and not by WellPoint. She concluded that, "there is no reason from our prospective, that you cannot reschedule your surgery with Dr. Sullivan." Id.

On March 15, 2013, Ms. Peterson replied to Ms. Kendrick that "Empire's words the day my

surgery was canceled was that my surgery and hospitalization was fully approved." Rec. doc. 4(Exhibit N).[2] She stated:

> My interest is to ensure that Dr. Sullivan is paid for his level of skills and experience, he is one of the 'handful' of micro vascular surgeons that Empire and me was informed has the skills and experience for the surgery I need. That is the reason I had to travel to New Orleans.

Id. at 1-2.

> This is not the first time I have been down this path. This has been a one and one half year journey. I was progressing toward surgery with Dr. Allen, Dr. Levine with PRMA when suddenly there were issues. As now, Empire is/was the common element.

Id. at 2.

From March 16 through 19, there were email exchanges between Ms. Peterson and Dr. Sullivan. On March 16, Dr. Sullivan reported that the February 28 letter was hand delivered to Ms. Peterson. He reported that since that time, Ms. Peterson had communications with him and his staff where she challenged the basis for the decision. He stated:

> After further review and investigation, am writing to inform you that I stand by my original decision, and will not be able to perform your surgery. It has been my experience that a successful outcome from surgery depends on the totality of the patient's circumstances. Based on your circumstances, there are too many risk factors that could lead to post-operative complications.

Rec. doc. 4 (Exhibit O at 3). He emphasized that, "my decision has nothing to do with your payment status." Id.

On March 17, Ms. Peterson acknowledged receipt of the February 28 letter. She contended that she reported to Dr. Sullivan the arrangements she had made for a caregiver. She described

---

[2] Rec. doc. 4 (Exhibit N) also bears the stamp "Exhibit A" and it indicates at the top of the page that it was filed in another federal court. Ms. Peterson states that Exhibit N was filed with the Southern District of New York as Exhibit A. Rec. doc. 4, para. 37 at 13.

conversations with Dr. Sullivan or his staff and stated:

> [A]fter months of discussion and communications, I came to New Orleans at expense I could not afford for surgery. I am in disbelief at the turn of events after I was examined, the procedure and post care explained and consent forms signed, that after Empire was called I was informed that Empire did not approve the procedure you recommended. We discussed this on our March 1 call and you stated that Empire payment for my hospitalization was much less than the cost.

Rec. doc. 4 (Exhibit O at 2).

> I request to proceed as you agreed on the March 1 call. I trusted you in your statement that you are a person of your word and values and continue that trust. I have requested that Anita Kendrick reschedule my surgery. Please provide the date to her, and also a date early next week for a meeting.

Id. at 3. On March 17, Dr. Sullivan replied in a short email. He stated that, in the telephone conversation with Ms. Peterson, he made no commitment to do the surgery and he found no evidence of mistreatment or misrepresentation by his staff. He stood by his decision that he would not perform the surgery. Id. at 1. On March 19, Ms. Peterson replied:

> This is not a simple matter. For months I anticipated this surgery, managed through the emotions and the enormity of the major surgery I was about to undergo, and as emails you have received show, managed multiple challenges with Empire Blue Cross Blue Shield, planned and came to New Orleans and this serious event has been reduced to an email exchange rather than a face to face discussion.

Id. at 1. Based on her review of emails to Anita Kendrick and what she had been told, "the actions/events do not align." Id. She requested a surgery date as soon as possible.

Ms. Peterson claims that Empire and WellPoint breached their contractual obligations as well as their obligations under the laws and Constitution of the United States in refusing to approve her surgery or altering the payment terms after she arrived in New Orleans which caused Dr. Sullivan to cancel the surgery. This is disputed by Empire and WellPoint. It is also disputed by Dr. Sullivan, who stated, based on her circumstances, that there were too many risk factors that could lead to post-operative complications. Accordingly, he refused to perform the surgery. He emphasized that his

decision had nothing to do with Ms. Peterson's payment status.

Ms. Peterson's communications to Dr. Sullivan indicate that she does not believe him and he was not revealing her the real reason for refusing to proceed with the surgery. Her communications indicate that she believed that the actions of WellPoint and Empire were responsible for Dr. Sullivan's decision. Ms. Peterson is claiming that Dr. Sullivan backed out of his original agreement to perform the surgery and her claim against the Surgery Center is in contract.

The authorities instruct that for contract cases, the court should focus on: (1) where the contract was negotiated; (2) where it was to be performed; and (3) where the harm was incurred. Wright §3806.1 at 205-15 (3rd ed. 2007). For the agreement with the Center for Surgery, the place of performance was New Orleans. Viewing the complaint in the light most favorable to Ms. Peterson, the contract was negotiated prior to her departure from Atlanta to come to New Orleans.[3] Even though the contract was negotiated before she departed from Atlanta, it was not negotiated in Atlanta. While Ms. Peterson was in Atlanta, Dr. Sullivan and the Center for Surgery are in New Orleans.

As to the first two factors, a similar analysis is applicable to the breach of contract claim against WellPoint and Empire. The contract was negotiated with Ms. Kendrick and others in Ohio and with Ms. Peterson in Atlanta. The place of performance was in New Orleans, as WellPoint and Empire agreed to pay for the surgery to be performed by Dr. Sullivan.

The harm was felt by Ms. Peterson in New Orleans, where she was denied the surgery and

---

[3] On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts all well–pleaded facts as true, viewing them in the light most favorable to plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). The same standard should be applied to Ms. Peterson's complaint on the consideration of her motion to transfer. The Surgery Center denied that there was a contract with Ms. Peterson. It contends, however, that if there was a written contract with Ms. Peterson it would have been signed in New Orleans. Rec. doc. 26 at 23.

forced to remain while she attempted to reschedule it.  It is assumed that she contends that she continues to suffer harm after her return to Atlanta.  The suffering of economic harm within a district is not sufficient without more to warrant transactional venue in that district.  Wright § 3806.1 at 215.

In Engel v. W.R. Berkley Corp., 2001 WL 238113 (N.D.Tex.), the plaintiff, who had moved to Texas, sued the operator of her former employer's group insurance program for its refusal to approve prescribed medical treatment and pay her claim for insurance benefits.  She sought treatment in Texas.  The on-the-job accidents occurred in North Carolina, where she had been employed.  The court found that her claim was for the denial of benefits for treatment which she received in Texas and thus venue was proper in Texas.  See also Carolina Casualty v. Data, 158 F.Supp.2d 1044, 1047 ("In an insurance coverage action, to establish venue via Section 1391(a)(2), a court looks to the underlying events for which coverage is sought.").  These authorities demonstrate that venue for the dispute between Ms. Peterson and the defendants is proper in New Orleans but do not demonstrate that venue in this dispute over a refusal to perform surgery and insurance coverage is proper in Atlanta.

The only relationship between Atlanta and the litigation over Dr. Sullivan's refusal to proceed with the surgery is that Ms. Peterson lived in Atlanta and communicated with Empire, Wellpoint and the Surgery Center from Atlanta to arrange for the surgery.  A substantial part of the events giving rise to the claim did not occur in the Northern District of Georgia.  The transferee district is not a judicial district in which Ms. Peterson's claim could have been filed.  Volkswagen, 371 F.3d at 203.  Even with a lenient standard for a finding that a substantial part of the events occurs in a district, there were not sufficient events in Atlanta to establish venue for Ms. Peterson's claims.

Assuming that Ms. Peterson's action could have been brought in Atlanta, the Court is

required to consider the convenience of parties and witnesses the interest of justice.

> The determination of convenience turns on a number of private and public interest factors, none of which are given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

Volkswagen, 371 F.3d at 203 (citations and quotation marks omitted).

Ms. Peterson contends that she only filed suit in the Eastern District of Louisiana because she was here and sought to have the surgery immediately. With the denial of her motion for a TRO and her return to Atlanta there is no further need for the case to proceed in New Orleans. The burden is on Ms. Peterson to demonstrate her entitlement to the transfer. Wright, § 3848 at 162-63. While her choice is a factor, the courts hold the plaintiff's choice in varying degrees of esteem. Id. at 120-21. A transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to the other since no overall advantage would be gained and there is no reason to believe that the interests of justice would be served by a change in venue. Id. at 150. A long list of cases can be cited for the basic proposition that the balance of convenience must be strongly in favor of the moving party before a transfer of venue will be ordered under Section 1404(a). Id at 152-156.

The terms "parties and witnesses" in Section 1404(a) contemplate consideration of the parties and witnesses in all claims and controversies properly joined in the proceeding. Volkswagen, 371 F.3d at 204. The primary witnesses are Ms. Peterson, Ms. Kendrick and Dr. Sullivan. The persons employed at the Surgery Center are witnesses. On March 16, Dr. Sullivan stated, "you have had

several communications with me and my staff in which you challenged the basis for my decision. . ." and "[i]n your conversations with my staff. . . ." Rec. doc. 4 (Exhibit O at 3). On March 17, Dr. Sullivan stated "I offered to review your communications with my office. . .;" "I found no mistreatment nor misrepresentation from my staff. . .;" and "[a]fter discussing this at length with my staff, I stand by my decision." Id. at 1-2. The testimony from Dr. Sullivan's staff is required. Dr. Sullivan cannot testify as to what his staff told him without being met by a hearsay objection.

The caregivers recruited by Ms. Peterson while she was in New Orleans are witnesses.

As to Dr. Sullivan, the Surgery Center employees and the caregivers, consideration of the convenience of the witnesses weighs in favor of New Orleans over Atlanta. As to Empire and WellPoint, the travel connections for Ms. Kendrick are marginally better for travel to Atlanta then New Orleans. Atlanta is a more convenient forum than New Orleans for Ms. Peterson. Part of the reason for this is that Ms. Peterson is proceeding in proper person. Convenience of counsel is not a factor under Section 1404(a). Volkswagen, 371 F.3d at 206. The public and private concerns under Section 1404(a) weigh against the transfer of the case to Atlanta.

It will be recommended that Ms. Peterson's motion to transfer be denied. The normal deadline for an objection to a report and recommendation is 14 calendar days. Because Ms. Peterson is acting on her own behalf, she will be given 21 calendar days to object.

Ms. Peterson requested a stay pending transfer. She is not required to respond to defendants' motions to dismiss until the District Judge acts on the recommendation to deny Ms. Peterson's motion to transfer.

## RECOMMENDATION

IT IS RECOMMENDED that Ms. Peterson's motion for transfer and to stay pending transfer (Rec. doc. 20) is DENIED.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within twenty-one (21) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 24th day of June, 2013.

---
**SALLY SHUSHAN**
**United States Magistrate Judge**

**Clerk to serve Andrea Petersen:**
**ajnpeterson@gmail.com**